**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LISA ROACH** | : |
| PO Box 1031 | : |
| New Haven, WV 25265 | :   Civil Action No. |
| | : |
|     **Plaintiff, for herself and all** | :   JUDGE |
|     **others similarly situated,** | : |
| | :   MAGISTRATE JUDGE |
|     v. | : |
| | : |
| **INCLUSIONS, LLC** | : |
| c/o Statutory Agent: Mary J. Miller | :   <u>**Jury Demand Endorsed Hereon**</u> |
| 43660 Hartinger Rd., | : |
| Pomeroy, OH 45769 | : |
| | : |
| and | : |
| | : |
| **MARY MILLER**, | : |
| 43660 Hartinger Rd., | : |
| Pomeroy, OH 45769 | : |
| | : |
| and | : |
| | : |
| **DOUG MILLER**, | : |
| 43660 Hartinger Rd., | : |
| Pomeroy, OH 45769 | : |
| | : |
|     **Defendants**. | : |

<u>**COLLECTIVE AND CLASS ACTION COMPLAINT**</u>

Now comes Plaintiff Lisa Roach ("Plaintiff"), on behalf of herself and all others similarly situated, and proffers this Complaint for damages against Defendant Inclusions, LLC, ("Inclusions"), Defendant Mary Miller, and Defendant Doug Miller.

This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111"), and the Ohio Constitution.

**NATURE OF SUIT**

1.       Plaintiff, individually and on behalf of other members of the general public similarly situated as set forth herein, seeks to recover overtime wages owed pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

2.       Plaintiff, individually and on behalf of other members of the general public similarly situated as set forth herein, attaches supplementary state law claims seeking to recover overtime wages owed pursuant to the Ohio Minimum Fair Wage Standards Act, R.C. Chapter 4111 ("MFWSA" or "Chapter 4111").

3.       Plaintiff, individually, seeks relief and damages pursuant to the Ohio Constitution related to Defendants' failure to provide timekeeping and payroll records to Plaintiff upon Plaintiff's written request.

4.        Plaintiff, individually, seeks to recover damages owed pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, *et seq.* and by the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112") for disability discrimination, retaliation, and failure to accommodate.

**JURISDICTION AND VENUE**

5.       This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, R.C. Chapter 4111 ("MFWSA" or "Chapter 4111"), the Ohio Constitution, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, *et seq.*, the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112"), and 28 U.S.C. §1331.

2

6. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

7. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

8. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio and performed her job duties there, a substantial part of the events or omission giving rise to the claim occurred in the Southern District of Ohio, and Defendants have done substantial business in the Southern District of Ohio.

## THE PARTIES

9. Plaintiff Lisa Roach is an individual, a United States citizen, and a resident of Mason County, West Virginia.

10. At all times relevant herein, Plaintiff and others similarly situated are "employees" of Defendants as that term is defined by the FLSA, MFWSA, Ohio Constitution, ADA, Revised Code Chapter 4111, and Revised Code Chapter 4112.

11. Defendant Inclusions is a Limited Liability Company registered to do business in Ohio.

12. Defendant Inclusions, located at 126 S. 4th Ave., Middleport, Ohio 45760 in Meigs County, is a company that provides residential, vocational, and adult day services to individuals with physical and developmental disabilities.

13. Mary Miller is an individual who is a United States citizen, and a resident of Megis County, Ohio.

14. Upon information and belief, Mary Miller is Defendant Inclusions' Co-Founder, Co-Owner, and CEO, has a significant ownership interest in Defendant Inclusions, participates in Defendant Inclusions' day-to-day operations, supervises Defendant Inclusions' employees, and controls the pay policies and practices related to Defendants' employees.

16. Doug Miller is an individual who is a United States citizen and resident of Megis County, Ohio.

17. Upon information and belief, Mr. Miller is Defendant Inclusions' Co-Founder and Co-Owner, has a significant ownership interest in Defendant Inclusions, participates in Defendant Inclusions' day-to-day operations, supervises Defendant Inclusions' employees, and controls the pay policies and practices related to Defendants' employees.

18. At all times relevant herein, Defendants are an "employer" as that term is defined by the FLSA, ADA, Revised Code Chapter 4111, Ohio Constitution, and Revised Code Chapter 4112.

19. At all times relevant to this action, Defendants have been engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

20. Upon information and belief, Defendants' employees were engaged in interstate commerce and Defendants have annual gross volume sales and/or business in an amount not less than $500,000.00 during each the three years preceding this Complaint.

21.     Upon information and belief, at all times relevant herein, Defendants were fully aware of the fact that it was legally required to comply with the wage and hour laws of the United States and of the State of Ohio.

22.     Plaintiff brings this action on her own behalf and on behalf of those similarly situated, and she has given written consent to bring this action to collect unpaid overtime and other unpaid compensation under the FLSA.  Plaintiff Lisa Roach's consent is being filed along with the Complaint pursuant to 29 U.S.C. §216(b).  (*Consent to be Party Plaintiff*, attached hereto as **Exhibit A**).

23.     During relevant times, Defendants benefitted from the work performed by Plaintiff and those similarly situated as defined herein.

24.     During relevant times, Defendants had knowledge of and acted willfully with regard to its conduct described herein.

25.     Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

## FACTUAL BACKGROUND

26.     Plaintiff was employed by Defendants between November 2019 and January 18, 2022, as a Direct Service Provider and as a House Manager.

27.     Between approximately November of 2019 through August of 2020, Plaintiff worked in the position of Direct Support Provider ("DSP").

28.     The job duties of DSP's include traveling to client homes to provide various support services to disabled clients. This support ranges from assistance with eating or personal grooming to administration of medication or other healthcare needs of the disabled client, general housekeeping, and running errands and grocery shopping for the client.

29.    At all times relevant herein, DSPs, including Plaintiff when she was employed in that position, were paid on an hourly basis.

30.    DSPs are not exempt from the overtime mandates of the FLSA and Ohio law.

31.    DSPs, including Plaintiff, consistently worked more than 40 hours per workweek within the three years prior to filing this Complaint.

32.    At all times relevant herein, DSPs were not paid overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.

33.    Instead, only some of the hours DSPs worked in excess of 40 in a workweek were paid at one and one-half times their regular rate of pay. DSPs were required to perform work duties "off-the-clock" each week. This "off-the-clock" work was not paid at any rate.

34.    Upon information and belief, at all times relevant herein, Defendants were aware that Plaintiff and other similarly situated employees performed work "off-the-clock" including time spent performing "shift change reports," and time spent traveling between multiple client's homes in a single work shift.

35.    At all times relevant herein, Plaintiff and other similarly situated employees were required to report to each of their DSP work-shifts fifteen (15) minutes earlier than scheduled to participate in a "shift change report" where the DSP being relieved from duty would report to the incoming DSP on the client's behaviors, medical conditions, and activities during their shift so that the incoming DSP was informed of the client's condition to ensure continuity of care was provided.

36.     At all times relevant herein, the "shift change reports" were performed "off-the-clock" and Plaintiff and other similarly situated employees were not paid for their time spent performing "shift change reports."

37.     The shift change reports was integral and indispensable to the DSP's principal activities. During the shift change report, DSPs were provided information necessary to safely and effectively care for the client.

38.     Additionally, Plaintiff and other similarly situated employees are often required to drive between multiple client's homes within a single shift.

39.     The time spent traveling between client's homes in a single shift varies, depending on the number of clients Plaintiff and other similarly situated employees were providing services to and the distance between the client's homes.

40.     At all times relevant herein, Plaintiff and other similarly situated employees were not paid for their time spend traveling between client's homes within a single shift.

41.     Upon information and belief, the uncompensated time Plaintiff and other similarly situated employees spent performing shift change reports and traveling between client's homes in a single work shift, constituted unpaid overtime.

42.     Between in or around August of 2020 through the end of her employment with Defendants, Plaintiff was employed by Defendants in the position of "House Manager" for one client.

43.     As a House Manager, Plaintiff primarily performed DSP duties for the client at the client's home, as well as supervising one other DSP scheduled to work on shift with her.

44.     From the time Plaintiff became a House Manager until the time Defendants terminated her employment, Defendants misclassified Plaintiff as a salary exempt employee. At

all times relevant herein, as a House Manager Plaintiff was not paid a salary of at least $685 per week.

45.     At all times relevant herein, when Plaintiff was employed by Defendants as a House Manager, she was paid a salary of approximately $540 per week, regardless of the number of hours she actually worked in a single work week.

46.     When Plaintiff was employed by Defendants in the position of House Manager, she was not paid an overtime premium of one and one-half times her regular rate of pay for all hours worked over 40 in a workweek.

47.     As a House Manager, Plaintiff was scheduled to work Monday through Friday 8 am – 4 pm. In addition to work performed during her regularly scheduled shifts, Plaintiff was required to perform work before and after her regularly scheduled shifts. This additional work performed was unpaid "off-the-clock" work

48.     At all times relevant herein, as House Manager, Plaintiff consistently worked more than 40 hours per workweek.

49.     Upon information and belief, at all relevant times herein, Defendants were aware that Plaintiff was performing work before and after her regularly scheduled shifts after she began working in the House Manager Position.

50.     Plaintiff, while employed by Defendants as a House Manager, was required to travel from her client's house to Defendant Inclusions' office at the end of each Tuesday shift to attend 1-3 hour meetings with Defendants Mary Miller and Doug Miller to go over billing and other paperwork related to Defendants' clients.

51.    Plaintiff while employed by Defendants as a House Manager, was not paid for the time spent traveling from her client's home to the Inclusions office, nor was she paid for the 1-3 hour weekly meetings.

52.    Plaintiff, while employed by Defendants as a House Manager, was required to report to each of her work-shifts fifteen (15) minutes earlier than scheduled to participate in a "shift change report" regarding her client. Plaintiff was not paid for this time.

53.    Additionally, Plaintiff, while employed by Defendants as a House Manager was required to run errands for her client after her regularly scheduled shift ended, including grocery shopping. Plaintiff was not paid for this time.

54.    Plaintiff suffers from bulging spinal discs, the symptoms of which substantially impair her ability to engage in ordinary life activities.

55.    Plaintiff is disabled as defined under the ADA.

56.    On or around August of 2021, Plaintiff learned that she would need to have surgery on her back to correct spinal issues.

57.    Plaintiff then informed Doug Miller that she would need to have surgery performed on her back and requested a reasonable accommodation in the form a medical leave.

58.    Instead of granting Plaintiff a reasonable accommodation in the form of a medical leave, Defendants terminated her employment and promised to rehire her after she recovered.

59.    Before terminating Plaintiff, Doug Miller offered Plaintiff $1000 to delay her surgery because Inclusions was short staffed. Plaintiff refused to delay her surgery.

60.    On or around September 26, 2021, Plaintiff learned that her surgery was cancelled. Plaintiff requested to return to work.

9

61.     On or around October 4, 2021, Mary Miller contacted Plaintiff and told her not to return to work until she recovered from her rescheduled surgery.

62.     On or around October 29, 2021, Plaintiff had back surgery to correct her bulging discs.

63.     While recovering from surgery, Plaintiff communicated regularly with Doug Miller. At no point did Defendants tell Plaintiff that she was being recalled to work, or that Defendants would not permit her to return to work after she recovered.

64.     On or around December 30, 2022, Plaintiff saw her primary care physician who determined she needed additional time to recover from surgery. Plaintiff's doctor wrote her a note with a return-to-work date of on or around February 28, 2022.

65.     On or around December 30, 2022, Plaintiff texted Doug Miller the doctor's note and informed him that she needed additional time to recover from her surgery. Doug Miller did not reply to this text.

66.     On or around January 28, 2022, Plaintiff received a letter dated January 18, 2022 from Mary Miller informing her that she would not be rehired at Defendant Inclusions and her position would be filled because she had been recalled to work on December 1, 2022, and had failed to communicate with Defendants.

67.     Upon information and belief Plaintiff was replaced by a non-disabled employee.

68.     Plaintiff has exhausted her administrative remedies. On or around April 15, 2022, the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC") issued a Right to Sue Notice. (*Notice of Right to Sue*, attached hereto as **Exhibit C**).

69.     On or around February 10, 2022, Plaintiff made a written request to Defendants for her payroll and timekeeping records pursuant to Article 2, Section 34a of the Ohio Constitution and the Ohio Revised Code Section 4111.14(F), (G).

70.     On or around February 10, 2022, Mary Miller responded to this written request and informed Plaintiff that her timekeeping and payroll records would be sent to her.

71.     As of the time of the filing of this Complaint, Defendants have not provided Plaintiff with her payroll or timekeeping records.

## COLLECTIVE AND CLASS ALLEGATIONS

### COUNT I
### FLSA Collective Action, 29 U.S.C. §201, *et seq*. - Failure to Pay Overtime

72.     All of the preceding paragraphs are realleged as if fully rewritten herein.

73.     This claim is brought as part of a collective action by Plaintiff on behalf of herself and all other Similarly Situated Persons ("SSPs") of the opt-in class (the "FLSA Overtime Class"). The FLSA Overtime Class includes:

> **All current or former Direct Support Providers who were not paid time and one half their regular rate of pay for hours worked over forty (40) during a workweek, inclusive of work performed "Off The Clock," during the prior 3 years.**

74.     This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) as claims for overtime compensation, compensation withheld in violation of the FLSA, liquidated damages and attorneys' fees and costs under the FLSA.  In addition to Plaintiff, numerous SSPs have been denied proper compensation due to Defendants' payroll policies and practices.  Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

75. During the three years preceding the filing of this Complaint, Defendants employed Plaintiff and the FLSA Overtime Class.

76. Plaintiff, while employed in the position of DSP, and the FLSA Overtime Class were paid on an hourly basis.

77. These SSPs are known to Defendant and are readily identifiable through Defendants' pay records. These individuals may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. §216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

78. Defendants knew or should have known that the applicable pay structure and/or pay policies violated the FLSA.

79. During the past three years, Defendants have knowingly and willfully failed to pay Plaintiff and the FLSA Overtime Class an overtime premium for all hours worked over 40 in a workweek.

80. As a direct and proximate result of Defendants' conduct, Plaintiff and the FLSA Overtime Class have suffered damages.  Plaintiff and the FLSA Overtime Class seek unpaid compensation, liquidated damages, interest and attorneys' fees/costs, and all other remedies available, on behalf of themselves and all other SSPs.

## COUNT II
### R.C. 4111 — Rule 23 Class Action For Unpaid Overtime

81. All of the preceding paragraphs are realleged as if fully rewritten herein.

82. This claim is brought under Ohio Law.

83. Defendants' pay policy related to Plaintiff and the Ohio Overtime Class violates the Ohio wage laws because it fails to pay Plaintiff and the Ohio Overtime Class an overtime premium for all hours worked over 40 in a workweek.

84.     During all times material to this complaint, Plaintiff and the Ohio Overtime Class have been employees within the meaning of R.C. § 4111.14(B), and not otherwise exempt.

85.     Defendants' repeated and knowing failure to pay overtime wages to Plaintiff and the Ohio Overtime Class were violations of R.C. §4111.03.

86.     For Defendants' violations of R.C. §4111, Plaintiff and the Ohio Overtime Class are entitled to recover unpaid wages, interest, attorneys' fees/costs, and all other remedies available under Ohio law.

87.     Plaintiff also brings her Ohio Wage Laws claims pursuant to Fed.R.Civ.P. 23 as a class action on behalf of herself and all other members of the following "Ohio Overtime Class":

> **All current or former Direct Support Providers who were not paid time and one half their regular rate of pay for hours worked over forty (40) during a workweek, inclusive of work performed "Off The Clock," during the prior 2 years.**

88.     The Ohio Overtime Class, as defined above, is so numerous that joinder of all members is impracticable.

89.     Plaintiff is a member of the Ohio Overtime Class and her claim for unpaid wages are typical of the claims of other members of the Ohio Overtime Class.

90.     Plaintiff will fairly and adequately represent the Ohio Overtime Class and the interests of all members of the Ohio Overtime Class.

91.     Plaintiff has no interest that is antagonistic to or in conflict with those interests of the Ohio Overtime Class that she has undertaken to represent.

92.     Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Overtime Class.

93.     Questions of law and fact are common to the Ohio Overtime Class.

94.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to its non-exempt employees in Ohio.

95.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) as Defendants acted or refused to act on grounds generally applicable to the Ohio Overtime Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

96.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law and facts common to the Ohio Overtime Class predominate over questions affecting individual members of the Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

97.     Questions of law and fact that are common to the Ohio Overtime Class include, but are not limited to: (a) whether Defendants violated the Ohio Wage Laws by failing to pay Hourly Employees Overtime pay for all hours worked over forty (40) in a workweek, inclusive of hours worked "off the clock"; (b) whether Defendants' violations of the Ohio Wage Laws were knowing and willful; (c) what amount of unpaid and/or withheld compensation is due to Plaintiff and the Ohio Overtime Class on account of Defendants' violations of the Ohio Wage Laws; and (d) what amount of prejudgment interest is due to Ohio Overtime Class members on the overtime or other compensation which was withheld or not paid to them.

98.     A class action is superior to individual actions for the fair and efficient adjudication of the Ohio Overtime Class's claims and will prevent undue financial, administrative and procedural burdens on the parties and the Court.  Plaintiff and counsel are not aware of any pending Ohio litigation on behalf of the Class, as defined herein, or on behalf of any individual alleging a

similar claim.  Because the damages sustained by individual members are modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against the Defendants to vindicate their rights.  Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

### INDIVIDUAL ALLEGATIONS

### COUNT III
### FLSA 29 U.S.C. § 201, *et seq.* – Failure to Pay Overtime

99.     All of the preceding paragraphs are realleged as if fully rewritten herein.

100.    Plaintiff was an employee of Defendants within the previous three years of the filing of this Complaint.

101.    From on or around August of 2020 until the end of her employment, Defendants misclassified Plaintiff as a salary exempt employee and failed to pay Plaintiff an overtime premium for all hours worked in excess of 40 in each workweek.

102.    Plaintiff was not exempt from the overtime provisions of the FLSA.

103.    Defendants failed to pay Plaintiff a weekly salary of at least $685 per week. Plaintiff's job duties also did not meet any of the exemptions.

104.    Defendants were aware that Plaintiff worked more than 40 hours per workweek but did not receive overtime compensation at a rate of one and one-half times her regular rate of pay for hours worked in excess of 40 per workweek.

105.    Defendants knew or should have known of the overtime payment requirement of the FLSA and that Plaintiff was a non-exempt employee entitled to overtime compensation for all hours worked in excess of 40 per workweek.

106. Defendants' refusal to properly compensate Plaintiff as required by the FLSA was willful.

107. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.

## COUNT IV
### R.C. 4111.03 – Failure to Pay Overtime

108. All of the preceding paragraphs are realleged as if fully rewritten herein.

109. Defendants violated the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code, Section 4111.03 by misclassifying Plaintiff as an exempt employee and failing to compensate Plaintiff at a rate of one and one-half her regular rate of pay for all hours worked in excess of 40 in each workweek.

110. Defendants' knowing failure to pay Plaintiff overtime wages for hours worked in excess of 40 per workweek is a violation of Section 4111.03 of the Ohio Revised Code.

111. For Defendants' violations of R.C. 4111.03, Plaintiff is entitled to recover unpaid wages, an additional two times the amount of the unpaid wages, attorneys' fees and costs, and all other remedies available under Ohio law.

## COUNT V
### R.C. 4113.15 – Failure to Tender Pay by Regular Payday

112. All of the preceding paragraphs are realleged as if fully rewritten herein.

113. Plaintiff asserts this claim under R.C. § 4113.15, which requires Defendants to pay their employees within thirty (30) days of the performance of compensable work.

114. Defendants failed and continue to fail to make proper wage payments to Plaintiff for all hours worked.

115. By failing to make the wage payments within 30 days of when such payments are due, Defendants are violating R.C. § 4113.15.

16

116.    For Defendants' violations of R.C. § 4113.15, Plaintiff is entitled to recover unpaid wages and liquidated damages equal to six (6) per cent of the amount of her claim or two hundred dollars, whichever is greater.

## COUNT VI
### Section 34a, Article II, Ohio Constitution and R.C. § 4111.14 – Failure to Provide Payroll and Timekeeping Records

117.    All of the preceding paragraphs are realleged as if fully rewritten herein.

118.    Plaintiff made a written request to Defendants for her payroll and timekeeping records pursuant to the Ohio Constitution and R.C. § 4111.14.

119.    Defendants were required to provide Plaintiff with those records within 30 days of receipt of her written request.

120.    Defendants knew or had reason to know that Plaintiff had made a written request for her payroll and timekeeping records.

121.    Defendants knew or had reason to know that they were required by law to provide Plaintiff with her payroll and timekeeping records within 30 days of her written request.

## COUNT VII
### ADA 42 U.S.C. § 12101, *et seq*. – Disability Discrimination
### (Against Inclusions LLC Only)

122.    All of the preceding paragraphs are realleged as if fully rewritten herein.

123.    At all times material herein, Plaintiff was disabled, or regarded as being disabled, as defined in 42 U.S.C. § 12102.

124.    Plaintiff is an otherwise qualified individual.

125.    Defendant Inclusions knew or had reason to know that Plaintiff suffered from a disability, and/or regarded her as disabled.

126.     Defendant treated Plaintiff less favorably than other similarly situated employees without disabilities.

127.     Defendant discriminated against Plaintiff because of her disability and/or perceived disability by taking the following non-exhaustive list of actions: terminating her employment, failing to provide her with a reasonable accommodation, retaliating against her, and/or otherwise discriminating against her in the terms, privileges and conditions of employment.

128.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

129.     Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

**COUNT VIII**
**ADA 42 U.S.C. § 12101, *et seq*. – Failure to Accommodate**
**(Against Inclusions LLC Only)**

130.     All of the preceding paragraphs are realleged as if fully rewritten herein.

131.     At all times material herein, Plaintiff was disabled, or regarded as being disabled, as defined in 42 U.S.C. § 12102.

132.     Defendant knew or had reason to know that Plaintiff suffered from a disability, and/or regarded her as disabled.

133.     Plaintiff was an otherwise qualified individual with a disability.

134.     Plaintiff requested reasonable accommodations for her disability when she requested to go on a medical leave for her spinal surgery.

135.    Such reasonable accommodation was possible for Defendant to provide.

136.    Defendant violated the ADA by failing to accommodate Plaintiff's disability, by retaliating against Plaintiff for seeking a reasonable accommodation, and by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability

137.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

138.    Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT IX
### R.C. § 4112 - Disability Discrimination

139.    All of the preceding paragraphs are realleged as if fully rewritten herein.

140.    At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A) of the Ohio Revised Code.

141.    At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. § 4112.01

142.    Defendants knew or had reason to know that Plaintiff suffered from a disability, and/or regarded her as disabled.

143.    Plaintiff's disability substantially limits her ability to perform several major life functions.

144. Defendants discriminated against Plaintiff because of her disability and/or perceived disability by taking the following non-exhaustive list of actions: terminating her employment, failing to provide her with a reasonable accommodation, retaliating against her, and/or otherwise discriminating against her in the terms, privileges and conditions of employment.

145. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

146. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT X
## R.C. § 4112 - Failure to Accommodate

147. All of the preceding paragraphs are realleged as if fully rewritten herein.

148. At all times material herein, Plaintiff suffered from an impairment within the meaning of R.C. §4112.01.

149. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. § 4112.01

150. Defendants knew or had reason to know that Plaintiff suffered from a disability.

151. Plaintiff requested reasonable accommodations for her disability when she requested medical leave for her spinal surgery.

152. Such reasonable accommodations were possible for Defendant to provide.

153. Defendants violated R.C. § 4112.02 by failing to accommodate Plaintiff's disability, by retaliating against Plaintiff for seeking a reasonable accommodation, and by failing

to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability.

154.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

155.    Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, as to Count I and II, Plaintiff, the FLSA Overtime Class, and the Ohio Overtime Class, demand relief from Defendants as follows: an award against Defendants in an amount equal to the liability, losses, damages, liquidated damages, attorneys' fees, costs, expenses and any other amounts available under the law incurred as a result of Defendants' violations, as well as equitable relief and a permanent injunction enjoining Defendant from further violating the FLSA and Ohio law.

WHEREFORE, as to Count III – Count VI, for Plaintiff Roach only: unpaid wages, compensatory damages, liquidated damages, interest, attorneys' fees and costs, punitive damages, and all other remedies available under the FLSA and Ohio law.

WHEREFORE, as to Count VII – Count X, for Plaintiff Roach only: monetary damages including back pay and benefits, front pay, statutory liquidated damages, compensatory damages, punitive damages, expert witness fees, pre-judgment and post-judgment interest, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than

$75,000.00, and any and all other relief which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Greg R. Mansell*
Greg R. Mansell (0085197)
*(Greg@MansellLawLLC.com)*
Rebecca L. Hill (0100972)
*(Rebecca@MansellLawLLC.com)*
**Mansell Law, LLC**
1457 S. High St.
Columbus, OH 43207
Ph: 614-610-4134
Fax: 614-547-3614
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Greg R. Mansell*
Greg R. Mansell (0085197)